**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff,**

v.

**PROTOS SHIPPING INC., Dietrich Tamke K.G., Reeder Hans Beilken O.G.H., Partenreederei MS "Triton" Jork, Reederei Bartels K.G., Reedereigesellschaft Henry Gerdau K.G., Reederei G. Ritscher K.G., K.G. Paul Heinrich, Reedereigesellschaft Gerhard Oltmann K.G., Defendants.**

No. 78 C 98.

United States District Court,
N. D. Illinois, E. D.

May 14, 1979.

**980**

Henry F. Field, Beverly J. Klein, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Warren J. Marwedel, Dennis Minichello, Haskel & Perrin, Chicago, Ill., for defendant shipowners.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on the motions of eight German shipowners to quash service of process and to dismiss for lack of in personam jurisdiction. For the reasons hereinafter stated, the motions will be denied.[1]

---

1. In a memorandum and order of July 26, 1978, defendant Reederei Schepers & Co., K.G. M/S TIM S, was granted its motion to quash service of process and to dismiss for lack of in person-

Plaintiff Continental Illinois National Bank and Trust Company of Chicago brought this action in the Circuit Court of Cook County, Illinois, claiming that defendants tortiously interfered with their contractual relations with Great Lakes and European Lines, Inc., of Chicago [hereinafter GLE]. On December 30, 1977, summons was issued upon the defendants. On January 11, 1978, prior to the completion of personal service upon the defendant shipowners in Germany, defendant Protos was served and removed this action to the United States District Court for the Northern District of Illinois based on the grant of original jurisdiction in federal courts for admiralty cases under 28 U.S.C. § 1333. Subsequent to the removal, the shipowners were all personally served in Germany pursuant to the Illinois "long arm" statute, Ill.Rev.Stat. ch. 110, § 17 [hereinafter section 17].

Plaintiff's three-count complaint sets forth plaintiff's claim to all accounts receivable and contract rights of GLE and alleges that defendant German shipowners through their Illinois agent, defendant Protos, wrongfully interfered with plaintiff's rights in GLE funds. The complaint further alleges that the defendant shipowners through Protos wrongfully converted to their own use sums due plaintiff pursuant to a security agreement and assignment from GLE. Plaintiff seeks an accounting of the sums taken and converted, a declaration of its rights, and a judgment for damages.

The six remaining defendant shipowners bring motions to quash service of process and to dismiss for lack of in personam jurisdiction on the grounds that process served by a state court subsequent to removal to federal court is null and void and that the shipowner defendants have insufficient minimum contacts with Illinois for the assertion of long-arm jurisdiction over them. Memoranda have been submitted in support, in opposition, in reply, and in surreply to the motions.

## I. Background

Defendant shipowners submitted the affidavits of their owners or managers to the effect that they are German corporations that are not incorporated or registered in Illinois; they have never authorized or appointed a general agent for service of process in Illinois; they had no place of business, employees or property in Illinois; they do not transact business in Illinois; and they never purposefully sought to involve the benefits or protection of the laws of Illinois. The affiants further state that defendants' ships were time chartered to GLE of Chicago, Illinois, pursuant to linertime charter parties. While time chartered to GLE, the vessels called at ports in Illinois in 1977 under the orders, instructions, and commands of GLE.

Plaintiff submitted the affidavit of Robert Wilchar, the vice-president of GLE, in opposition to the motions to quash and to dismiss. Wilchar states that the vessels owned by the moving defendants called on the port of Chicago, Illinois, pursuant to the charter party to GLE and discharged and received cargo. On November 24, 1977, GLE received a telex from the German agents of the shipowners of the "Karen Oltman," "Regine," "Nordic," and "Planet," that Protos had replaced GLE as agent for the owners. On November 26, 1977, Wilchar met with Otto Bosman, the president of Protos, on behalf of the owners of the four above-named vessels and the owners of the vessels "Jan" and "Kaethe Johanna" (the owners of these six vessels are the six moving defendants) regarding the off loading of cargo from the vessels and documentation in this regard. Subsequently, Wilchar states that he had several conversations with Bosman concerning the documents requested in telexes and on November 30,

---

am jurisdiction. In addition, after the completion of briefing on the motions to quash service of process and to dismiss for lack of in personam jurisdiction, plaintiff Continental Bank vol-untarily dismissed its action pursuant to Fed.R. Civ.Proc. 41(a) against defendants Dietrich Tamke K.G. and Partenreederei MS "Triton" Jork. Six German shipowners remain.

1977, Wilchar received a letter from Protos requesting the cargo documents to which the telexes referred. Wilchar states that he then furnished all of the information that GLE had on the vessels to Protos. Wilchar further states that Bosman told him on several occasions that Protos had been retained as agent for each of the shipowners. Wilchar sent a telex on November 30, 1977, to the chartering agent of the shipowners in Germany to inform them that all documents in the possession of GLE were turned over to Protos in Chicago.

Plaintiff also submitted the affidavit of its employee, Robert Buss. Buss states that he received letters from Protos "on behalf of the owners" of the vessels involved asserting claims and requesting release of documents relating to the vessels. On November 26, 1977, Buss states that he attended a meeting with Bosman, the president of Protos, where Bosman acted on behalf of the shipowners regarding off loading of cargo and documentation. On November 20, 1977, and on December 13, 1977, Buss received letters from Protos "as agent for Owners" regarding the meeting of November 26, 1977, documentation on the off loading of cargo, and notification that the shipowners were exercising their lien rights. In addition, on December 12, 1977, Protos wrote a letter as "agents for Owners" of the "Kaethe Johanna" to Freight Base, Inc., with a carbon to Buss, stating that pursuant to the letter, the shipowners were exercising their lien rights.

Defendants submitted the counteraffidavit of Otto Bosman, the president of Protos of Chicago.[2] Bosman states that Protos was initially requested in November, 1977, to collect freights for the vessels involved but not to act as general agent for these vessels. The vessels involved were not in Chicago at that time. Bosman further states that the owners gave notice that freight was payable to them and that plaintiff was placed on notice of the claims and

originally agreed to assist in their collection. Protos is no longer authorized to seek to collect freight monies for any of the vessels, and subsequently, the vessels have not come to Chicago and have been handled by the owners or by other steamship companies.

## II. Service of Process

Defendant shipowners bring motions to quash service of process upon them for insufficient process. Relying on *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967), defendants contend that a state court loses all authority and jurisdiction over a lawsuit and the parties to a lawsuit once a case is removed to federal court. Thus, defendants contend that the service of the state process upon them subsequent to removal did not subject them to the jurisdiction of either the federal or state court.

Pursuant to 28 U.S.C. § 1446(e), a state court's power to issue orders with respect to a removed case terminates upon removal. Nonetheless, here, where a case has been removed to federal court by one defendant and the other defendants have not yet been served with process, "such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. Service in cases originally filed in federal district court upon foreign corporate defendants as found here may be made in the manner authorized by state law. Fed.R.Civ.Proc. 4(d)(7) and (e). Thus, the completion of state service of process upon the defendant shipowners after defendant Protos removed the case to this court was proper service of process pursuant to 28 U.S.C. § 1448.

The court in *Beecher v. Wallace, supra* at 373, ruled contrary to the explicit wording of 28 U.S.C. § 1448 allowing completion of service of state court process after remov-

---

2. Defendants also submitted the counteraffidavit of Captain John Hill, the Assistant Vice-President of the Services Group of GLE. Hill's affidavit responds to statements made by Wilchar in his affidavit. The statements of both of these affiants in regard to the business arrangements for the boat dockings in Chicago and the making of incentive payments to the crews of vessels are irrelevant to this decision.

al.[3] The court's decision improperly deified form over substance. First, additional service by the federal district court clerk upon the shipowner defendants would add nothing because federal court service may be made pursuant to Fed.R.Civ.Proc. 4(d) and (e) in the same manner as the service made under section 17 by the Circuit Court of Cook County. Second, the defendant shipowners were fully informed by the service made as they received actual notice of the complaint by the personal service and service of the removal petition by Protos, the removing party, pursuant to Fed.R.Civ. Proc. 5.

### III. In Personam Jurisdiction

Defendant shipowners contend that this court may not exert in personam jurisdiction over them because they lack minimum contacts with Illinois. None of the defendant shipowners are incorporated or registered in Illinois. Plaintiff asserts jurisdiction pursuant to the Illinois long-arm statute, section 17. Section 17 provides that a nonresident corporation submits to the jurisdiction of Illinois courts by transacting any business or committing a tortious act in Illinois, and the cause of action arises from the transaction of business or the tortious act. *Chromium Industries v. Mirror Publishing & Plating Co.*, 448 F.Supp. 544, 550 (N.D.Ill.1978). Plaintiff asserts that defendant shipowners acted through their agent, Protos, in tortiously interfering with a contractual relationship between the plaintiff and GLE, whereby defendants through their agent, Protos, converted funds belonging to plaintiff for their own use.

In *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court held that for in personam jurisdiction to be exercised over a nonresident defendant, due process requires that the defendant have certain "minimum contacts" with the forum so that maintenance of the suit would not offend tradi-

tional notions of fair play and substantial justice. The minimum contacts test requires a case-by-case examination of the nonresident's connections with the forum to determine whether a nonresident has "engaged in some act or conduct by which he may be said to have invoked the benefits and protection of the laws of the forum." *Hutter Northern Trust Co. v. Door County Chamber of Commerce*, 403 F.2d 481, 484 (7th Cir. 1968).

With the facts viewed most favorably to the plaintiff, *Chromium Industries v. Mirror Publishing & Plating Co., supra* at 551, the court finds that it has jurisdiction over defendant shipowners pursuant to section 17, because plaintiff's cause of action arises from the commission of tortious acts by defendant shipowners through their agent, Protos, sufficient to constitute minimum contacts with Illinois.

The affidavits show that Protos acted as an agent on behalf of the defendant shipowners in Illinois by engaging in correspondence and meetings to obtain cargo documentation for the off loading of the defendants' ships and the payment of freight charges for the cargo by holding itself out to be an agent in Illinois of the defendant shipowners in correspondence and conversations, and by actively pursuing and receiving the necessary documentation and freight charges on behalf of the defendant shipowners. In addition, four of the defendant shipowners acting through their German agent stated in a telex to GLE that Protos was expressly authorized to act in regard to bills of lading and unpaid bills. As to the other two defendant shipowners, Protos had implied authorization to act on their behalf in the meetings and correspondence with GLE and the plaintiff.

The existence of the business relationship between the defendant shipowners and GLE of Chicago without proof of some ancillary contact with Illinois does not provide sufficient ground for the assertion of

---

**3.** The decision in *Beecher v. Wallace, supra*, is incorrect as a matter of law and will not be followed in this circuit. *In re Folding Carton*

*Antitrust Litigation*, 75 F.R.D. 727, 731 (N.D.Ill. 1977).

long-arm jurisdiction under section 17. *Quartet Manufacturing Co. v. Allied Truckers, Ltd.*, 343 F.Supp. 1302, 1303 (N.D.Ill. 1972). Nonetheless, the defendant shipowners had ancillary contacts with Illinois through employment of Protos of Chicago as their agent for the acts that are the basis of plaintiff's complaint. Certainly the assertion of lien rights to freight charges in Illinois through Protos by the shipowners invoked the "benefits and protection" of Illinois law. *Hutter Northern Trust Co. v. Door County Chamber of Commerce, supra* at 484.

■ The main focus of defendants' contention that this court lacks in personam jurisdiction over them is that defendants do not transact business in the state of Illinois. The court need not determine whether defendant shipowners have sufficient contacts to constitute the transaction of business within the meaning of section 17, because plaintiff's complaint is based on the commission of tortious acts by defendant shipowners' agent in Illinois, an alternative ground for determining minimum contacts under section 17. Allowing jurisdiction here under the long-arm grant for commission of a tortious act will not lead to the complete elimination of the "transaction of business" ground as defendants contend. This is because the allegations of tort made here are directly based on the actions of an agent on behalf of the defendant shipowners. In addition, defendants' claim that allowing this action to proceed based upon the commission of a tortious act will displace the application of federal maritime law for a federal maritime claim is irrelevant to whether in personam jurisdiction exists.

Defendant shipowners contend that Protos was not their agent as the term is understood in admiralty law. The cases defendants cite in support of their proposition are inapposite because they involve the Fed.R.Civ.Proc. 4(d)(3) requirement limiting personal service upon a corporation to service upon "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See, e. g., Grammemos v. Lemos*, 457 F.2d 1067 (2d Cir. 1972). The assertion of in personam jurisdiction is a distinct inquiry from service of process requirements. Here, where defendant shipowners were personally served in Germany and Protos functioned as the shipowners' agent in Illinois even though it was not appointed to receive service of process, in personam jurisdiction is present.

Defendants further contend that the court does not have in personam jurisdiction over them because plaintiff's allegations are totally without merit. Defendants seek to have the court examine the nature of plaintiff's allegations, because acts or omissions which form the basis of a cause of action that is patently without merit will not serve to confer jurisdiction. *Stansell v. International Fellowship, Inc.*, 22 Ill.App.3d 959, 962, 318 N.E.2d 149 (1st Dist. 1974). In *Stansell*, defendant committed no act within Illinois, so the allegations of the complaint on their face demonstrated no basis for jurisdiction. For the shipowners to state that they had a prior lien neither determines that plaintiff's claim is patently without merit nor ends the inquiry whether a tort was committed in the process of collecting on the lien by their agent. On the basis of plaintiff's complaint, the court does not find that plaintiff's tort claim is patently without merit.

■ Defendants further contend that this court has no in personam jurisdiction over them because they have terminated their relationship with Protos and because their vessels were outside the jurisdiction of this court at the time the alleged torts were committed. Because Protos acted as agent for the defendant shipowners at the time of the alleged torts serving as grounds for plaintiff's complaint, the later termination of agency is irrelevant. In personam jurisdiction cannot be withdrawn for tortious conduct arising from an agency later terminated; otherwise a foreign corporate defendant could avoid the assertion of jurisdiction in these circumstances simply by terminating the agency relationship.

## IV. Conclusion

For the reasons stated, it is therefore ordered that the motions of defendant shipowners to quash service of process and to dismiss for lack of in personam jurisdiction shall be, and the same are, hereby denied.